TATUM and WARD *v.* CHARLES BONNER, Administrator, &c.

T. and W. brought suit upon the indorsement or assignment made upon a promissory note, which was in these words: "I assign this note to C. & H., and indorse the prompt payment of it;" and upon the trial of the case, the plaintiffs asked the following instruction, which the court below refused to give to the jury: "That the words, 'I assign this note to C. & H., and indorse the prompt payment of it,' which were used by the defendant's intestate, in the assignment of the note sued on, constitute in law a guaranty of said note by said assignor, and demand and notice were not necessary to fix the liability of said decedent:"— *Held*, that demand and notice were not necessary, and the court erred in refusing to give the instruction asked.

The word "indorse" must be construed with reference to the words "prompt payment" in the same clause of the sentence, and it is obvious that "indorse," in that connection, means guaranty.

In error from the circuit court of Marshall county; Hon. Hugh R. Miller, judge.

The facts of the case are contained in the opinion of the court.

*D. Mayes* for appellants.

In *Brown* v. *Curtis*, 2 Comst. 227, the court say, " I do not mean that the very words of an agreement are always to be followed. Construction is often necessary to ascertain what the parties intended by the words which they used. But when the meaning of an instrument has been ascertained, the office of construction is at an end, and the contract can only be enforced as the parties have made it," &c. This was a case of guaranty, and the reasoning of the court following the quoted words apply in full force to this case: " The undertaking was not conditional, like that of an indorser," &c.

The word "indorse" is not a mere technical term; and if it was, where it stands in such connection that to give it a mere technical import would render the member of the sentence in which it stands wholly unmeaning, the court cannot so construe it. The rule as to technical words in a contract is not the same with that which applies to statutes. Legislators are supposed to understand the technical meaning of words. Not so of ordinary contracting parties. But even if a technical term be introduced in a statute, the courts do not adhere to their strict technical meaning in all cases. Smith's Com. 630, § 483, 484; 5 Hill, R. (N. Y.), 523; Ib. 548; Barb. S. C. R. 229.

In *United States* v. *Curtis*, 4 Mason, R. 232, Judge Story holds that the legislature may use technical words in an untechnical sense, and when from the context this is ascertained, it is the duty of the court to construe the words according to the legislative intent; much more, certainly, where it is a contract inartificially drawn.

*Clapp* and *Strickland* for appellee.

" Where the language of an instrument is neither uncertain nor ambiguous, it is to be expounded according to its apparent import; and it is not to be warped from the ordinary meaning of its terms, in order to harmonize it with uncertain suppositions as to the probable intention of the parties." Story on Cont. 562, § 639. Lord Coke expresses the same rule more briefly. " *Quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba expressa fienda est.*" Co. Litt. 147 a. Another rule is, or rather an exception to the 3d rule, on which the counsel for plaintiffs in error rely, namely, " that the terms of a contract are ordinarily to be interpreted according to their popular and usual meaning, rather than according to their exact definition," is, " that wherever technical words or phrases are employed, they are to receive the interpretation which custom or science has affixed to them. Thus the terms of mercantile contracts are to be understood in the sense which they have acquired from mercantile usage." Story on Cont. 572, § 647. These rules are to be regarded as of universal application, and it may be considered wholly unnecessary to cite authorities in support of them ; the following cases, however, are referred to as bearing on the point before the court. " Technical words, in a written contract, must have a technical interpretation." *Ellmaker* v. *Ellmaker*, 4 Watts, 89 ; 7 Greenl. 383. " The interpretation of every contract must be governed by the subject-matter to which it relates, with reference at the same time to any known usage connected therewith." *Robinson* v. *Fiske*, 12 Shep. 401. " In bills of lading, &c., where the terms employed have, by usage, acquired a particular signification, the parties will be presumed to have used them in that sense." *Wayne* v. *Steamboat General Pike*, 16 Ohio, 421. Where the language is equivocal, the intention of the parties will be considered in construing it; but where the language is plain, though not expressing their real intention, there is no room for construction, and it will be enforced according to its terms. *Benjamin* v. *McConnell*, 4 Gil. (Ill.) 536.

In the case of a guaranty, it is now the settled doctrine that

the guarantor is only entitled to demand and notice where he can show that he has been injured by the omission. 3 Kent, Com. 123 and notes, and authorities *passim.* But in the case of an indorser, the law, in the absence of an express agreement to the contrary, always presumes that he stipulates for demand and notice. Story, Prom. Notes, 147, notes. And agreements for the waiver of demand and notice, being in derogation of the rules of the law merchant, are always construed strictly. Ib. 315, § 272 and notes. The universal sentiment of all the authorities bearing upon the point is, that wherever a party who writes his name on the back of mercantile paper can be charged as indorser, he shall be liable in that character and in no other, and the rule is only departed from where an opposite construction is necessary to prevent an entire failure of the contract. In the case of paper not negotiable, or where the indorsement is made by a third person not an original party to the paper, there may be room for some latitude of construction and conflict of opinion; but if the paper is negotiable, and the party can be charged as indorser, the rule is uniform and inflexible that he shall be.

There is a very numerous class of cases to be met with in the books, in which the indorsement or writing upon the note is made by third persons not parties to the paper, and the question in such cases is, whether the person sought to be charged is liable as indorser, joint maker, surety, or guarantor. The rule deduced from these cases, as recognized by this court in *Thomas v. Jennings,* 5 S. & M. 627; 13 Ib. 617, is, that if the paper is negotiable, one who writes his name on the back shall generally only be held liable as indorser. 5 Ib. 630; 13 Ib. 620. If he put his name on the back at the time it was made, according to a promise to become originally and directly responsible, or if he participated in the consideration for which the paper was given, he has been adjudged a joint maker. If his indorsement was subsequent to the making of the note, and he had nothing to do with the original consideration, but put his name on the note to add to the security, he has been adjudged a guarantor. These cases are referred to as illustrating the distinction between negotiable and non-negotiable paper.

In *Dean* v. *Hall*, 17 Wend. 215, which is recognized and adopted by our high court in the cases above referred to, the court remarks that the reason why a third person who puts his name on the back of a non-negotiable note is charged as guarantor, is because he could not be charged as indorser, and having put his name on the paper, he must be chargeable in some shape, *ut res magis valeat quam pereat.* On p. 220, same case, it is said, " None of the cases can mean that, whatever may be the consideration, if the defendant stand in the ordinary relation of a commercial indorser, he is not to be treated as such." " Where one is placed in the relation of indorser, he is entitled to all the privileges of that character, amongst which are, demand and notice." Ib. 223.

In *Seabury* v. *Hungerford*, 2 Hill, 84, it is said, " If the note is negotiable, the only inference is that the party only intended to become indorser. Before he can be made liable as guarantor or maker, there must at least be an agreement that he will answer as such." In case of a note not negotiable, the indorsement of the note by the payee is, from necessity, equivalent to a guaranty, or making a new note. *Seymour* v. *Van Slyck*, 8 Wend. 35.

An indorsement is a contract regulated exclusively by the law merchant; but a guaranty is a common law contract. The one cannot, under any circumstances, be treated as equivalent to the other. *Miller* v. *Gaston*, 2 Hill, N. Y. 188. See also 7 Wend. 307; 17 Ib. 215; 2 Hill, N. Y. 84; 3 Ib. 233; 24 Pick. 250; 18 Ib. 537; 4 Ib. 385; *Oxford Bank* v. *Haynes*, 8 Ib. 423; Fell on Guar. 188; 1 Wm. Saund. 211, note 2.

A joint action cannot be sustained against the maker and guarantor of a promissory note. *Tapper* v. *Campbell*, 9 Yerg. 436, 441; *Oxford Bank* v. *Haynes*, 8 Pick. 428; *Thomas* v. *Jennings*, 5 S. & M. 627. Whilst one may be liable as assignor and guarantor, because the assignment merely divests the legal title, and the liability of the assignor and guarantor are very nearly alike, both requiring only reasonable diligence to fix the liability, and not being governed by the rules of the law merchant.

Mr. Justice FISHER delivered the opinion of the court.

This is a writ of error to the judgment of the circuit court of Marshall county.

The suit was brought against the defendant below as administrator of the estate of Samuel D. Martin, upon a special assignment made by the deceased of a promissory note, made by E. F. Buckner. The assignment is in these words, namely: "I assign this note to Cook & Holland, and indorse the prompt payment of it. March 16, 1848. S. D. Martin." The counsel for the plaintiffs below asked the court to give the following instruction to the jury, "that the words 'I assign this note to Cook & Holland, and indorse the prompt payment of it,' which were used by the defendant's intestate, in the assignment of the note sued on, constitute in law a guaranty of said note by said assignor, and demand and notice were not necessary to fix the liability of the said decedent thereon;" which instruction the court refused to give, but in effect instructed the jury that said assignment imposed upon the intestate no other obligation than that of an ordinary indorser, and that to charge him, demand and notice were necessary at the maturity of the note. The jury following, as they were bound to do, this latter instruction, found a verdict for the defendant, which the court, on a motion for new trial, refused to set aside.

It will at once be perceived, that the question for decision is, whether the court below erred in refusing to give the instruction asked by the plaintiff's counsel.

In the construction of contracts, the court must endeavor to ascertain the intention of the parties, from the language which they themselves have employed, and this language may be taken either in a technical or popular sense, as it will best serve to unfold the terms of the contract, as actually assented to by the parties. Martin, by merely writing his name on the back of the note, assumed the obligation of an ordinary indorser. This obligation was only conditional, dependent upon the fact of demand of payment from the maker, and notice of non-payment at the proper time.

The special assignment must have been intended for one of two purposes, either to restrict or to enlarge the liability of an ordinary indorser. It is manifest that it was not designed for

the former purpose; and the latter being its object, the question is, to what extent the intestate intended, by the language employed, to assume a liability beyond that of an ordinary indorser? The word "indorse," when used in contracts, is generally understood in a technical sense; but it may be taken according to its popular and modern meaning, when necessary to carry into effect the obvious intention of the contracting parties. What did Martin mean, when he said that he indorsed "the prompt payment of the note?" It amounted, to say the least, according to the popular meaning of the word "indorse," to a positive and unqualified assertion, that the promise of Buckner to pay on a particular day, would be promptly complied with on his part. The word must be construed with reference to the words "prompt payment," in the same clause of the sentence, and when thus interpreted it is obvious that the word "indorse" was used in its broadest popular sense, which is sometimes synonymous with the word "guaranty;" and this is evidently what was intended.

It is conceded that if a guaranty was intended, and the contract is so construed that demand and notice were not necessary to charge the intestate, the court therefore erred in refusing to give the plaintiff's instruction to the jury.

Judgment reversed, new trial granted, and cause remanded.